Janet A. Chubb, Executive Director Kansas Racing Commission 3400 Van Buren Topeka, Kansas 66611-2228
Dear Ms. Chubb:
You request our opinion regarding application of the interstate horseracing act of 1978, 15 U.S.C.S. secs. 3001 et seq., to Kansas racetrack facilities. You advise that Eureka Downs has been granted a license to conduct a fair meeting from May 7 through July 4, 1994. This license authorizes live horse races and simulcast horse races. You further advise that Wichita Greyhound Park's license authorizes it to simulcast horse races each weekend, beginning Saturday June 4, 1994. You question whether Wichita Greyhound Park's display of simulcast horse races, absent Eureka Downs approval, violates the provisions of the interstate horseracing act.
The interstate horseracing act of 1978 was enacted in an attempt to balance the competing interests of tracks conducting live horse races and entities that accept wagers on races being conducted in another state (interstate off-track wagers). See Senate Report No. 95-1117, 1978 U.S. Code Cong. Admin. News 4147. The act accomplishes this by prohibiting the acceptance of interstate off-track wagers unless consent is obtained from the track which conducts the live race, the racing commission having jurisdiction over the live race, and the racing commission having jurisdiction over the entity accepting the interstate off-track wagers.15 U.S.C.S. secs. 3003, 3004(a). (In Kansas the entity accepting interstate off-track wagers would be a track licensed pursuant to K.S.A.74-8836, as amended, to simulcast races conducted in other states.) In states, such as Kansas, that have fewer than 250 scheduled on-track parimutuel horse race days per year, approval must also be obtained from all currently operating tracks within 60 miles of the simulcast location and, if there are no currently operating tracks within 60 miles, then the nearest currently operating track in an adjoining state.15 U.S.C.S. sec. 3004(b). A currently operating track is one that conducts parimutuel horse racing at the same time of day (afternoon against afternoon, nighttime against nighttime) as the track conducting the live race that is the subject of the simulcast.15 U.S.C.S. sec. 3002(14).
 "With this provision, the Congress recognizes a national interest in ensuring the adequate cooperation of States with fewer than 250 days of scheduled parimutuel horseracing a year in the acceptance of legal interstate off-track wagers . . . by requiring, in subsection (b) of [sec. 3004], this additional limited `market area consent': for the acceptance of legal interstate off-track wagering by off-track betting systems in States with fewer than 250 days of scheduled parimutuel horseracing a year, . . . the consent of all horse racetracks within 60 miles of the off-track betting offices accepting the interstate wagers, whether in the off-track State or another State, must be obtained. If there are no tracks within 60 miles of the off-track betting office accepting the interstate wagers then consent must be obtained from the closest track in an adjoining State. Consent is only required under either provision if the track is `currently operating', which means it is actually running horseraces in an afternoon or evening program that coincides with an afternoon or evening program that is the subject of the interstate off-track wagers. Thus an overlap in a track's afternoon program and a night program at the track which is the subject of interstate off-track wagers would not give the former track any rights under the market area protection provisions of the act." Senate Report, supra at 4152.
We are told that Eureka Downs is conducting live horse races on Saturday and Sunday afternoons, the same days and times as Wichita Greyhound Park seeks to simulcast out-of-state horse races and accept wagers thereon. Thus, if Eureka Downs is within 60 miles of Wichita Greyhound Park, Wichita Greyhound Park would be required to seek the consent of Eureka Downs before it may accept wagers on the interstate simulcast races. If Eureka Downs is not within 60 miles of Wichita Greyhound Park, and no other currently operating track is within that distance, Wichita Greyhound Park must seek the consent of the nearest currently operating track in any adjoining state.
15 U.S.C.S. secs. 3001 et seq. do not delineate how the 60 mile radius is to be measured. Nor are there any reported cases dealing with this issue in terms of the interstate horseracing act. The legislative history of the act expresses the theory that "properly regulated and properly conducted interstate off-track betting may contribute substantial benefits to the States and the horseracing industry. These benefits would result from expanded market areas that would enable an increased number of fans to participate in racing. . . ." Senate Report, supra at 4147. The history further states: "Small race tracks can survive only because major race tracks are not located in competing geographical locations. Consequently, racing fans patronize local tracks." Id. at 4148. Thus, the intent appears to have been to protect the viability of both the tracks conducting the live races and the off-track betting operators by creating a protected geographic market area, or cushion, of 60 miles surrounding the affected tracks. Because track patrons are not likely to be airlifted in to the track conducting the live races, it is more likely that Congress intended the 60 miles to be measured in road miles rather than air miles. What matters is the accessibility of the track to potential patrons. Thus, if Eureka Downs is not within 60 road miles of Wichita Greyhound Park, it is our opinion that Wichita Greyhound Park is not required to obtain the approval of Eureka Downs to simulcast horse races during Eureka Downs season, but, if there are not currently operating tracks within 60 miles Wichita Greyhound Park would be required to seek the approval of the nearest out-of-state currently operating track.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm